Johnny **SHORT**, By Next Friend Helen **SOUTHERLAND**, Samuel Southerland, Appellants–Plaintiffs,

v.

**ESTWING MFG. CORPORATION,** Appellee–Defendant.

No. 27A05–9302–CV–40.

Court of Appeals of Indiana, Fifth District.

May 31, 1994.

---

Steven C. Smith, A Professional Corp., Steven C. Smith, Patrick R. Ragains, Anderson, for appellants-plaintiffs.

Michael R. Morow, Stephenson and Kurnik, Indianapolis, for appellee-defendant.

RUCKER, Judge.

When eight-year-old Johnny Short struck a rock with the claw end of a nail hammer, a piece of the hammer broke loose and struck him in the eye causing serious injury. Based

on theories of negligence and products liability Johnny's parents sued the company that manufactured the hammer. The company filed a motion for summary judgment which the trial court granted. Appellant Johnny Short by next friends Helen Southerland and Samuel Southerland (hereafter "Short") now appeal presenting the following issues for review:

1. Whether there are genuine issues of material fact precluding the trial court's entry of summary judgment in favor of Estwing Manufacturing Corporation on Short's products liability claim?

2. Whether there are genuine issues of material fact precluding the trial court's entry of summary judgment in favor of Estwing Manufacturing Corporation on Short's negligence claim?

We reverse.

On October 19, 1986, then eight-year-old Johnny Short was present in the backyard of the family home watching his stepfather use a nail hammer to dig a trench in the ground around the house. He decided to try the same task. While his stepfather was preoccupied, Johnny retrieved the hammer and began to scrape away rocks in the trench. Discovering a large rock embedded in the ground, Johnny attempted to remove it by digging around the rock with the claw end of the hammer. When that proved unsuccessful, Johnny struck the claw end of the hammer against the rock. On impact a metal chip broke from the claw end of the hammer and flew into Johnny's eye. As a result, Johnny suffered permanent loss of vision.

Acting as next friends, Johnny's mother and stepfather filed suit against Estwing Manufacturing Corporation ("Estwing"), the manufacturer of the hammer, on theories of products liability and negligence. Estwing answered the complaint and thereafter filed a motion for summary judgment. The motion was supported by the affidavit of Dr. Rex McLellan, an expert in the design and safety of hand tools. According to the McLellan affidavit, the American National Standards Institute is the premier authority for establishing industry standards for the design and safety of nail hammers. ANSI Standard B173.1–1982 provides in relevant part that

nail hammers are "special-purpose tools designed and intended only for the specific use of driving or pulling common unhardened nails and ripping apart or tearing down wooden components or structures" and that the hammers "shall not be used to strike hard or hardened objects such as rocks, bricks, concrete ... and other steel tools." *Record* at 195. McLellan concluded that the hammer used by Short was not negligently manufactured nor unreasonably dangerous.

Short responded to Estwing's motion and filed the deposition of his own expert, Dr. Robert Walson. Walson testified that his examination of the hammer revealed a defect in its surface caused by heat treatment during the manufacturing process. Walson described the defect as decarburization, or a change in the original structure of the surface of the hammer. According to Walson, this change in structure rendered the hammer surface susceptible to cracking and breaking. Walson concluded that the hammer fracture which occurred in this case was a direct result of the decarburization.

Estwing filed the supplemental affidavit of Dr. McLellan in which he alleged that the hammer was within the acceptable range of hardness set by the ANSI standard. In addition, the McLellan affidavit maintained that no industry, scientific or technological standards existed for measuring levels of decarburization on the surface of nail hammers. After conducting a hearing, the trial court entered summary judgment in favor of Estwing on both of Short's claims. Short now appeals.

When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Houin v. Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied.* We must consider the pleading and evidence sanctioned by Ind.Trial Rule 56(C) without deciding its weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all facts

and inferences to be drawn therefrom are viewed favorably to the non-movant. *Id.*

### I.

Indiana's Product Liability Act imposes strict liability in tort upon sellers of a product in a defective condition unreasonably dangerous to any user or consumer. *Hinkle v. Niehaus Lumber Co.* (1988), Ind., 525 N.E.2d 1243, 1244 citing Ind.Code § 33-1-1.5-3. The definition of a product in a defective condition is provided by Ind.Code § 33-1-1.5-2.5:

(a) A product is in a defective condition under this chapter if, at the time it is conveyed by the seller to another party, it is in a condition:

(1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and

(2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

\* \* \* \* \* \*

(c) A product is not defective under this chapter if it is safe for reasonably expectable handling and consumption. If an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable under this chapter.

Estwing contends the trial court properly entered summary judgment on Short's products liability claim because striking a rock with the claw end of an ordinary nail hammer is not a reasonably expectable use and thus the product was not in a defective condition as a matter of law. Short counters that the trial court erred because the question of what is and what is not a reasonably expectable use is a question for the fact finder and cannot be determined by summary disposition.

We agree with Short. Reasonably expectable use like reasonable care involves questions concerning the ordinary prudent person, or in the case of products liability the ordinary prudent consumer. The manner of use required to establish "reasonably expectable use" under the circumstances of each case is a matter peculiarly within the province of the jury. *See Lovely v. Keele* (1975), 166 Ind.App. 106, 333 N.E.2d 866 (determination of what conduct constitutes reasonable care is normally a question for the jury). The test of reasonably expectable use centers on the manner of use which an ordinary prudent consumer would employ under the same or similar circumstances. In applying the test, it is not what the fact finder would have done as an individual, or in the case of a jury, even collectively. Rather, it is a matter of what the fact finder determines the abstract, reasonable prudent consumer, would have done under the circumstances. *See Peavler v. Bd. of Commr's* (1990), Ind.App., 557 N.E.2d 1077, *trans. denied,* (applying test in the case of reasonable care). In any event, questions of reasonableness cannot generally be resolved by motions for summary judgment. That is especially true here because an ordinary claw nail hammer is generally used in a variety of ways other than "pulling common unhardened nails and ripping apart or tearing down wooden components or structures." As the court observed in *Dunham v. Vaughan & Bushnell Mfg. Co.* (1967), 86 Ill.App.2d 315, 229 N.E.2d 684, 691, aff'd, (1969), 42 Ill.2d 339, 247 N.E.2d 401:

[A] hammer is an implement of beguiling simplicity, and there is probably no artifact with so many uses, real or fancied. No one is in awe of the art of using a hammer, and everyone, or anyone, deems himself competent to employ it, albeit, artfully or in frustration. It is to be found in many households, and children, from the time they are able to lift the artifact, can use it with enthusiasm, although the benefits may be dubious. A hammer is a hammer to most people and limitations in the implement, or its age, fitness and condition, are not apparent to the unsophisticated.

Because an issue of fact exists regarding whether Short's use of the hammer was reasonably expectable and thus whether the hammer was defective under I.C. § 33-1-1.5-2.5, summary judgment in favor of Estwing was improper and must be reversed.[1]

1. In a products liability case the question is not

only whether the product is in a defective condi-

## II.

Short also contends the trial court erred in granting Estwing's motion for summary judgment on the issue of negligence. According to Short, Estwing breached its duty to properly manufacture the claw hammer which proximately caused Short's injury. Estwing counters that (a) the question of duty involves elements of foreseeability and it was unforeseeable that a person would strike the claw end of a hammer on a hard object such as a rock and (b) in any event, because the hammer was manufactured in compliance with industry standards there has been no breach of duty as a matter of law.

The tort of negligence is comprised of three elements: 1) a duty owed to the plaintiff, 2) a breach of that duty by the defendant, 3) which proximately caused plaintiff's damage. *Cowe by Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630. Whether a duty exists is a question of law; breach of duty is a question generally reserved for the trier of fact. *Rubin v. Johnson* (1990), Ind.App., 550 N.E.2d 324, 330, *trans. denied.* In determining whether a common law duty exists between parties, it is sometimes necessary to balance three competing factors: 1) the relationship between the parties 2) the reasonable foreseeability of harm and 3) public policy concerns. *See Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, *reh'g denied; J.A.W. v. Roberts* (1994), Ind. App., 627 N.E.2d 802, *reh'g denied.* However, the necessity to balance these competing factors is obviated where, as here, the duty has already been clearly articulated. As applied to the case before us it is clear that a manufacturer is under no duty to produce accident-proof products. It is equally clear, however, that a manufacturer is legally bound to design and build products which are reasonably fit and safe for the purpose for which they are intended. *Liberty Mutual Ins. Co. v. Rich Ladder Co.* (1982), Ind.App., 441 N.E.2d 996. Thus, we must decline Estwing's implied invitation to balance the foreseeability of harm against the relationship between the parties and public policy concerns in determining whether Estwing owed any duty to Short in this case.

Further, Estwing's argument that there has been no breach of duty as a matter of law because the hammer complied with ANSI standards is unavailing. Standards set by an industry do not define the standard of reasonable care against which the conduct of a manufacturer in that industry will be measured in a negligence case. *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App. 489 N.E.2d 562, 575 *trans. denied.* "The fact that a particular product meets or exceeds the requirements of its industry is not conclusive proof that the product is reasonably safe. In fact, standards set by an entire industry can be found negligently low if they fail to meet the test of reasonableness." *Dudley Sports Co. v. Schmitt* (1972), 151 Ind.App. 217, 279 N.E.2d 266, 276, *reh'g denied.* Whether Estwing has breached its duty in this case is a matter best reserved to the trier of fact. Summary judgment on this issue is inappropriate.

Judgment reversed and cause remanded.

BARTEAU and MILLER, JJ., concur.

---

tion, but also whether it is in an unreasonably dangerous condition. Unreasonably dangerous is defined as "any situation in which the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's characteristics common to the community of consumers." Ind.Code § 33–1–1.5–2. In its motion for summary judgment concerning Short's products liability claim, Estwing presented materials only in support of the theory that the hammer was not in a defective condition.

While we acknowledge that the trial court's ruling on a motion for summary judgment may be affirmed on any theory supported by evidence of record, *Houin v. Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied,* the record here is devoid of evidence concerning the theory of whether the hammer was unreasonably dangerous. *See Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411 (since the 1991 amendments to Ind.Trial Rule 56 only those portions of the record that were specifically designated to the trial court comprise the entire record for appellate review).