ATTORNEY FOR APPELLANT
R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Christina D. Pace
Deputy Attorneys General
Indianapolis, Indiana



FILED
Aug 14 2017, 12:31 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 39S01-1705-CR-342

COREY MCALPIN,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

Appeal from the Jefferson Circuit Court, No. 39C01-1408-F4-707
The Honorable Darrell M. Auxier, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 39A01-1606-CR-1417

**August 14, 2017**

**Rush, Chief Justice**.

Juries decide a host of fact-sensitive disputes. Did the defendant kill "knowingly"? Resist "forcibly"? Drive "recklessly"? When the jury returns a guilty verdict and the defendant appeals the sufficiency of the evidence, our job is not to proclaim what we would have done as jurors.

Instead, we view the record favorably to the verdict and decide whether a reasonable fact-finder could convict.

Here, a jury found defendant Corey McAlpin guilty of committing various meth-related crimes with a drug-free-zone enhancement. Specifically, the jury determined that the crimes occurred near a public park where a minor's presence was "reasonably expected." Though this may have been a close factual call for the jury, we find the evidence sufficient and affirm McAlpin's enhanced conviction.

**Facts and Procedural History**

Nestled against the Ohio River, tucked away in rolling hills and limestone bluffs, lies picturesque Madison, Indiana. For that historic river town, Thursday, August 21, 2014, began as "just your normal" peaceful summer morning. Schools were in session. The sun was low. The temperature was warm, not yet blistering.

But something had been cooking on West Second Street—and it wasn't apple pie. Around 10:00 a.m., a team of police entered Corey McAlpin's apartment and noticed a "horrible" odor, like that of "50 cats . . . with no litter box." They soon learned why: the apartment was an active methamphetamine lab. Police found an abundance of meth-making supplies, including two active hydrochloric acid gas generators, a reaction vessel, a mangled plastic bottle, plastic tubing, drain cleaner, an empty box of pseudoephedrine, petroleum fuel, a cold pack, a razor blade, scales, syringes, a glass pipe, meth residue, and a mutilated lithium battery. McAlpin was arrested on the spot.

Two blocks from this meth operation sits Bicentennial Park. Pictured below, this city park features a wide-open green space surrounded by a residential neighborhood. It also has an outdoor amphitheater, restrooms, convenient parking, and sidewalks wrapping around and cutting within. The park does not, however, have benches, playgrounds, or trees:



The State used Bicentennial Park's proximity to McAlpin's apartment to enhance his charges to Level 4 felony dealing in methamphetamine, Level 5 felony possession of precursors, and Level 5 felony possession of methamphetamine. To prove these drug-free-zone enhancements, the State needed to show that McAlpin committed the crimes "within five hundred (500) feet of a public park . . . while a person under eighteen (18) years of age was reasonably expected to be present."

During the jury trial's closing arguments, the parties agreed that McAlpin's apartment was within 500 feet of a park but disputed whether a child was "reasonably expected" to be in the park during the crimes. The State acknowledged that schools were in session, but urged the jury to

> think of your stay-at-home moms, your stay-at-home dads. What about your grandparents, children under school age, toddlers, maybe a stay-at-home dad taking his infant son for a walk and stops at the park? What about home school children? They take breaks. They have recess. It's absolutely reasonable to conclude that a child under the age of 18 would be present at that park at 10 a.m. on Thursday, August 21.

McAlpin's counsel offered a different perspective, saying she would

> expect a six-year-old on that day to be in school. I would expect a 17-year-old who is not in school that day to be home in bed sleeping because that's what 17-year-olds do. But it's not reasonable to expect that there are pre-school age children in that park at that time of day on a hot August morning with no shade, no benches, no playground equipment, and that is an element of each one of the charges . . . .

After the jury's guilty verdicts, the court entered a conviction on Level 4 felony dealing methamphetamine and merged the other two counts. The court noted several aggravating factors—including that McAlpin committed the crimes while on probation, used methamphetamine for over a decade, wore a "Papa Smurf"[1] tattoo across his torso, and exposed his innocent apartment-complex neighbors to a "substantial risk of fire and/or explosion." The court sentenced McAlpin to ten years.

McAlpin appealed, and a divided panel of the Court of Appeals reversed the drug-free-zone enhancement and remanded for resentencing. The majority found insufficient evidence that a child was "reasonably expected" to be present at Bicentennial Park when McAplin's crimes occurred because schools were in session and the park lacked traditional park fixtures like trees, benches, and playgrounds. McAlpin v. State, 72 N.E.3d 940, 944 (Ind. Ct. App. 2017). In dissent, Judge Bradford thought that the "reasonably expected" element was a fairly debatable factual issue best left to the jury. Id. at 944–45 (Bradford, J., dissenting).

---

[1] At sentencing, one officer defined "smurf" as a street term for someone "involved in the gathering of ingredients for methamphetamine."

We granted the State's petition to transfer, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

The existence of a statutory enhancement is a "fact-sensitive" determination, reviewed under our deferential sufficiency standard of review. Erkins v. State, 13 N.E.3d 400, 409 (Ind. 2014); Buelna v. State, 20 N.E.3d 137, 141 (Ind. 2014). We examine the record in the light most favorable to the conviction, keeping in mind that the evidence need not be direct—a reasonable inference of guilt is enough. Lock v. State, 971 N.E.2d 71, 74 (Ind. 2012). And we affirm unless "no reasonable fact-finder" could find the defendant guilty. Id. This case thus boils down to one question: could a reasonable jury find on this record that the State proved the drug-free-zone enhancement?

## Discussion and Decision

Methamphetamine destroys lives. It addicts users, spews toxic fumes, spreads disease, and occasionally explodes when cooked.[2] Few states have suffered from this epidemic more than Indiana—which recently led the nation in meth-lab seizures.[3] To protect youth, the General Assembly has created drug-free-zone enhancements that boost penalties for meth dealing (and other drug crimes) when committed "within five hundred (500) feet of . . . a public park while a person under eighteen (18) years of age was reasonably expected to be present." Ind. Code § 35-48-1-16.5 (2014); see also Whatley v. Zatecky, 833 F.3d 762, 783–84 (7th Cir. 2016).

Here, the parties agree that Bicentennial Park was a "public park"[4] and that it sat within 500 feet of McAlpin's meth lab. They dispute only whether sufficient evidence proved that a minor's presence in the park was "reasonably expected." We begin by discussing that element, which the parties correctly agree is an objective, fact-sensitive inquiry. Then, applying our deferential standard of review, we hold that the evidence was enough.

---

[2] See Governor's Task Force on Drug Enforcement, Treatment & Prevention, Final Report (Fall 2016), at 9, http://www.in.gov/gtfdetp/files/Governors_Drug_Task_Force_Final_Report.pdf; Marion S. Green et al., What's Cooking? Meth Use in Indiana, Indiana University Center for Health Policy (July 2010), at 3–4, https://fsph.iupui.edu/doc/research-centers/Meth%20Use%20in%20Indiana%202010.pdf.

[3] Danielle Carriere & Janet Ayres, Methamphetamine Use in Rural Indiana, Purdue Extension Center for Rural Development (Jan. 2015), at 1, https://extension.purdue.edu/extmedia/EC/EC-794-W.pdf.

[4] A "public park" is "any property operated by a political subdivision for park purposes." I.C. § 35-31.5-2-258 (2014).

**I.** **The New "Reasonably Expected" Standard Is Objective and Fact-Sensitive—a Quintessential Question for the Fact-Finder.**

For over two decades, Indiana's drug-free-zone enhancements did not require that a child's presence be "reasonably expected." In 1988, the drug-free-zone enhancement required proof only that the drug crime was committed on a school bus or within 1,000 feet of school property. I.C. § 35-48-4-1 (1988). Amendments in 1995, 1996, and 2001 simply added more zones: public parks, family housing complexes, and youth program centers. P.L. 296-1995; P.L. 65-1996; P.L. 17-2001. But in 2014, as part of Indiana's comprehensive criminal code reform, the legislature made three changes. It deleted the youth program center and family housing complex zones, tightened the proximity element to 500 feet, and—front-and-center here—added the element that a minor's presence be "reasonably expected." See I.C. §§ 35-48-1-16.5, -4-1, -4-1.1 (2014).

Though the statute does not define the "reasonably expected" element, the parties correctly agree on its fact-sensitive, objective nature. See Short v. Estwing Mfg. Corp., 634 N.E.2d 798, 801 (Ind. Ct. App. 1994). Like the "reasonable care" standard in negligence law and the "reasonably expectable [use]" standard under Indiana's Products Liability Act, the enhancement's "reasonably expected" element does not rely on anyone's *subjective* expectation. See id. It does not require proof, for example, that the defendant actually anticipated that a child would be in the park. Instead, it asks what the *ordinary reasonable person* would expect under the circumstances. See id. And that objective, fact-intensive standard is "best applied by a jury after hearing all of the evidence." Rhodes v. Wright, 805 N.E.2d 382, 387 (Ind. 2004). After all, the jury is a body of citizens whose collective experience allows it to "draw wiser and safer conclusions" than any one person could. Louisville, Evansville & Saint Louis Consol. R.R. v. Berry, 9 Ind. App. 63, 35 N.E. 565, 566 (1893).

With this objective standard in hand, we analyze the evidence's sufficiency in this case.

**II.** **Sufficient Evidence Allowed the Jury to Conclude that a Minor Was Reasonably Expected to Be at Bicentennial Park.**

McAlpin acknowledges on appeal that the "reasonably expected" standard permits a range of evidence, but he asserts that the State failed to present what he calls the "best evidence"—that children typically use Bicentennial Park even while school is in session. This argument, however, does not scale the peak of our deferential sufficiency standard of review. The question here is not

whether the verdict was based on the "best evidence" but whether it was based on a reasonable inference. See Lock, 971 N.E.2d at 74. We hold that it was.

Through aerial photos and testimony, the jury heard circumstantial evidence on the ordinary reasonable person's expectations. The jury knew that Bicentennial Park is not buried in an exclusively industrial or commercial district, where homes and families are sparse. Instead, the park is surrounded by residences. And appropriate for a neighborhood park, it offers an outdoor amphitheater, restrooms, parking, and sidewalks. It also boasts the area's largest wide-open green field. The jury could reasonably conclude that this field, especially on a pleasant summer morning, is an attractive place for minors to unwind—to run, walk, crawl, throw a frisbee, fly a kite, play catch, play tag, play Red-Rover, and indulge in countless other youthful pastimes.

Again, this may have been a close call for the jury. Schools were in session. The park had no playground. It had no benches for resting, no shade trees to block the August sun. But the jury was free—indeed, instructed—to weigh these facts using its "common sense." See Halsema v. State, 823 N.E.2d 668, 673 (Ind. 2005). The jury could reason, for example, that not every child attends school or is school age, not every child needs a playground to have fun, and not every child needs shade at 10:00 a.m.

In sum, this is a fact-sensitive issue that we ask juries to resolve by drawing—or not drawing—certain inferences. See, e.g., Brewington v. State, 7 N.E.3d 946, 964–65 (Ind. 2014). We "trust juries to make such inferential decisions" not because they are infallible, but because they have the clearest view of the evidence to sift through subtle contextual factors. See id.; Noble v. State, 725 N.E.2d 842, 845 (Ind. 2000) (trusting juries to "sort out [conflicting] evidence in searching for the truth"). In making those judgment calls, the jury applies its "experiences in life," "common sense," and the "conscience of our society" as it "take[s] into account all of the facts and circumstances." See Wilson v. State, 697 N.E.2d 466, 477–78 (Ind. 1998). With that in mind, we decline McAlpin's invitation to invade the jury's province and thus reject his sufficiency claim.

**Conclusion**

To protect Hoosier youth from methamphetamine, our General Assembly has enhanced the penalty for dealing the drug within 500 feet of a public park where a person under 18 was "reasonably expected" to be present. Here, after seeing and hearing the evidence, the jury found

7

the "reasonably expected" element satisfied. Unable to second-guess that fact-sensitive decision, we affirm McAlpin's enhanced conviction.

David, Massa, Slaughter, and Goff, JJ., concur.