

**FILED**
Jun 29 2023, 1:10 pm
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-CR-165

## Christopher Jerome Harris,
*Appellant (Defendant below)*

—v—

## State of Indiana,
*Appellee (Plaintiff below).*

---

Argued: October 26, 2022 | Decided: June 29, 2023

Appeal from the Marion Superior Court
No. 49D27-1908-F3-32941
The Honorable Angela Dow Davis, Judge
The Honorable Barbara Crawford, Senior Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 21A-CR-1315

---

**Opinion by Justice Goff**

Justice Molter concurs in part and in the judgment with separate opinion in which Justice Massa joins.

Chief Justice Rush concurs in part and dissents in part with separate opinion in which Justice Slaughter joins in part.

Justice Slaughter dissents with separate opinion.

**Goff, Justice.**

In this case, we grant transfer to review a trial court's exclusion of testimony from the jury trial of Christopher Harris's habitual offender status. Harris wished to testify to the circumstances of his most serious crime of conviction, his intent to rehabilitate himself, and his purported innocence of one of his prior, unrelated felonies. The trial court excluded all this as irrelevant to the issue of whether Harris had accumulated the requisite convictions. Harris claims his testimony was relevant because Article 1, Section 19 of the Indiana Constitution gave the jury the right to determine, not only whether he had the convictions, but whether he was ultimately a habitual offender. A jury must indeed be allowed to decide whether a defendant is a habitual offender, irrespective of proof of the necessary convictions. Nevertheless, Harris's testimony was irrelevant because it did not tend to prove or disprove his convictions. He had no constitutional right to present irrelevant evidence. Hence, the trial court did not err by excluding the testimony.

# Facts and Procedural History

In the summer of 2019, Christopher Harris began "hanging out" with a woman who lived at an Indianapolis apartment complex. Tr. Vol. II, p. 224. He became suspicious that she was seeing another man. Harris approached the man as he sat in his car. Harris pointed a handgun at him, accused him of "messing with" the woman, fired two shots, swung the gun at the man's head, took money and a gold chain from him, and finally ordered the man out of the car before firing several more shots into it. *Id.* at 107–14. The man was left bleeding.

The State charged Harris with Level 3 felony robbery while armed with a deadly weapon, Level 4 felony unlawful possession of a firearm by a serious violent felon ("unlawful possession"), Level 5 felony battery with a deadly weapon, and Level 6 felony criminal recklessness while armed

with a deadly weapon.[1] A month later, the State filed a separate information seeking a sentence enhancement by alleging Harris to be a habitual offender on account of two prior, unrelated felony convictions.[2]

Before trial, Harris waived trial by jury and the State in turn dismissed the unlawful possession charge. After a bench trial, Harris was found guilty of robbery and battery as charged, but not guilty of criminal recklessness. Before going on to the habitual offender phase, the trial court noted that Harris had never had an initial hearing on the habitual offender charge. The trial court promptly held such a hearing, explaining to Harris that he was charged with accumulating two unrelated convictions, namely a 2002 Class B felony robbery conviction and a 2013 Class B felony unlawful possession conviction. The trial court advised Harris of his rights but pointed out that he had already waived trial by jury. The State then raised a concern that Harris might not have made an effective waiver of his right to a jury trial of the habitual offender enhancement. The trial court allowed Harris a choice and he elected a jury trial.

Nine days later, a jury was empaneled to determine whether Harris was a habitual offender. The parties stipulated to the existence of Harris's two convictions and that they constituted prior, unrelated convictions.[3] The trial court instructed the jury to accept these admissions. The State presented no further evidence.

The defense called Harris as a witness. He testified as to his age when his present and prior convictions had occurred. Counsel then asked whether there was "anything going on" in Harris's life at the time of the 2019 robbery. Tr. Vol. III, p. 106. The State objected that this was irrelevant. The trial court agreed, ruling that the only issue was "whether these two prior felony convictions make him a habitual offender." *Id.* at

---

[1] Ind. Code § 35-42-5-1(a) (2018); I.C. § 35-47-4-5(c); I.C. §§ 35-42-2-1(c)(1), (g)(2); I.C. §§ 35-42-2-2(a), (b)(1)(A).

[2] I.C. § 35-50-2-8(a) (2017).

[3] The written stipulation labelled the 2013 unlawful possession conviction a "Level 4" felony. Ex. 87.

107. Outside the jury's presence, Harris then proffered his testimony that, at the time of the robbery, he had recently been diagnosed with PTSD and was taking "some unfamiliar medication" that made him "like a zombie." *Id.* at 110. Counsel argued that this bore on Harris's "efforts at rehabilitation" and, thus, the jury's "determination as to his status of a habitual offender." *Id.* at 112. Harris also wished to testify to his "plans to further rehabilitate himself." *Id.* Finally, Harris wanted to explain the circumstances of his 2002 robbery conviction. Harris said he had been nineteen years old and in serious legal trouble for the first time. He "took a plea instead of knowing [he] could have went to trial" and "really wasn't guilty of the situation." *Id.* at 114. The trial court excluded this testimony as a collateral attack on a prior conviction.

The jury returned to the courtroom, the defense rested, and the trial court instructed the jury that it had the right to judge the facts and the law. Going further, the instructions told the jury that "even where you find that the fact of the prerequisite prior felony convictions is uncontroverted, you have the unquestioned right to find that the defendant is not a habitual offender." App. Vol. II, p. 197.[4] The jury found Harris to be a habitual offender. The trial court sentenced him to an aggregate term of twenty-seven years: twelve years for robbery, three years concurrently for battery, and a habitual offender enhancement of fifteen years to be served consecutively.

On appeal, Harris argued that the trial court's exclusion of his testimony violated Article 1, Sections 19 and 13 of the Indiana Constitution,[5] as well as federal guarantees of the right to testify in his own defense. A unanimous Court of Appeals panel deemed these claims waived for failure to raise them in the trial court. *Harris v. State*, 187

---

[4] We note that a trial court is "not obligated to issue an invitation to the jury to disregard prior convictions in addition to informing the jury of its ability to determine the law and the facts." *Walden v. State*, 895 N.E.2d 1182, 1186 (Ind. 2008).

[5] "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Ind. Const. art. 1, § 19. "In all criminal prosecutions, the accused shall have the right … to be heard by himself and counsel … ." Ind. Const. art. 1, § 13.

N.E.3d 287, 291, 294 n.5 (Ind. Ct. App. 2022). Waiver notwithstanding, the panel denied Harris's Article 1, Section 19 claim on the merits. *Id.* at 291–94. The panel noted that this Court's decision in *Seay v. State* recognized the jury's "discretion to refuse to find the defendant to be a habitual offender even if the defendant had the requisite prior felony convictions." *Id.* at 292 (citing 698 N.E.2d 732, 734 (Ind. 1998)). The panel further acknowledged this Court's later statement that "'the facts regarding the predicate convictions are relevant to the jury's decision whether or not to find a defendant to be a habitual offender.'" *Id.* at 293 (quoting *Hollowell v. State*, 753 N.E.2d 612, 617 (Ind. 2001)). The panel held, however, that a 2014 amendment to the habitual offender statute superseded this Court's precedent. *Id.* at 293 & n.4 (citing I.C. § 35-50-2-8(h)).[6] Under the amended statute, in the panel's opinion, the jury "only decides whether the defendant has the requisite prior felonies" and, if so, "then habitual-offender status is automatic." *Id.* at 293. Hence, "evidence about a defendant's convictions beyond the fact of conviction is no longer relevant." *Id.* at 294.[7]

We now grant transfer, thus vacating the Court of Appeals opinion. *See* Ind. Appellate Rule 58(A).

## Standards of Review

We assess a trial court's exclusion of evidence for abuse of discretion. *Ramirez v. State*, 174 N.E.3d 181, 189 (Ind. 2021). However, to the extent that constitutional claims or statutory interpretation are implicated, we review these issues de novo. *Id.*; *Church v. State*, 189 N.E.3d 580, 585 (Ind. 2022).

---

[6] *See* Pub. L. No. 158-2013, § 661, 2013 Ind. Acts 1155.

[7] The Court of Appeals also rejected Harris's sufficiency of the evidence claim and ordered the trial court to attach the habitual offender enhancement to the sentence for robbery. 187 N.E.3d at 291, 295. We summarily affirm the opinion below on these issues. *See* Ind. Appellate Rule 58(A)(2).

# Discussion and Decision

Harris argues that Article 1, Section 19 of the Indiana Constitution gives a jury "'discretion to determine whether a defendant is a habitual offender'" even when the requisite unrelated convictions have been proven. Appellant's Br. at 15 (quoting *Hollowell*, 753 N.E.2d at 617). From this, he infers that the relevant evidence encompassed not merely the "barebones" fact of his convictions, but, also, the circumstances of his crimes. *Id.* As the jury heard nothing about these circumstances, Harris contends, it had no basis to "'consider mercy.'" *Id.* (quoting *Hollowell*, 753 N.E.2d at 618 (Rucker, J., concurring in part)). Harris also claims that Article 1, Section 13, and various federal constitutional protections entitled him to testify in his own defense.

The State urges us to find Harris's claims waived. If not, then the State asks us to hold that the 2014 amendment to the habitual offender statute limited the jury's role to determining the existence of the unrelated convictions. According to the State, Article 1, Section 19 was implicated only so long as the statute gave the jury the right to determine habitual offender status. Thus, the State infers that only evidence regarding the unrelated convictions was relevant. The State also argues that the relevance issue was previously decided in its favor in *Taylor v. State*, 511 N.E.2d 1036 (Ind. 1987). Finally, the State insists that Harris's right to be heard is subject to the requirement that his testimony be relevant under the controlling substantive law.

Harris sufficiently preserved his relevance argument for appeal. He made offers to prove the testimony he wished to present. *See* Ind. Evidence Rule 103(a)(2). And he argued a basis for its relevance, namely the jury's need to determine whether he had the status of habitual offender. *See Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998) (stating that "the offer to prove should identify the grounds for admission of the testimony"). Counsel also stated in opening argument that the jury would "get to judge the law and the facts." Tr. Vol. III, p. 99. Of course, it is preferable to cite specifically to a source of law or an element of the pleadings when arguing for relevance at the trial level. But, in the context of this case, Harris did enough to apprise the trial court of the legal issue

involved. By contrast, we deem Harris's Article 1, Section 13 and federal constitutional arguments waived because they were raised for the first time on appeal. *See Winn v. State*, 748 N.E.2d 352, 359 (Ind. 2001). Nevertheless, because these claims are related to the Article 1, Section 19 issue, we choose to address them in the interest of providing a complete review of the matter. *See Sharp v. State*, 42 N.E.3d 512, 515 (Ind. 2015) (recognizing the "common practice" of exercising discretion to address claims notwithstanding waiver).

# I. The jury in a habitual offender proceeding has the constitutional right to determine habitual offender status.

The State argues that the amended habitual offender statute tasks the jury with determining only the existence of the unrelated convictions. As a first step, this opinion reviews our precedents on the role of the jury and concludes that Article 1, Section 19 applies to the habitual offender status determination. The jury must therefore be allowed to determine habitual offender status. Turning to the statute, it appears ambiguous whether the legislature intended the jury to determine status as well as prior convictions. Given this ambiguity, the interpretation that complies with constitutional requirements is preferable. The opinion therefore concludes that the jury retains its statutory role of determining a defendant's ultimate habitual offender status.

## A. Article 1, Section 19 of the Indiana Constitution applies to a jury trial of habitual offender status.

"Habitual offender is a status that results in an enhanced sentence." I.C. § 35-50-2-8(j). The State may seek to have a felony defendant sentenced as a habitual offender by alleging that he has accumulated the "prior unrelated felony convictions" required by statute. I.C. § 35-50-2-8(a). If the defendant was convicted of his present felony after a jury trial, there is then a "sentencing hearing" on the habitual offender charge before the same jury. I.C. § 35-50-2-8(h). Otherwise, the habitual offender charge is

adjudicated by the trial court. *Id.* It must be proven beyond a reasonable doubt that the defendant has the alleged convictions. I.C. §§ 35-50-2-8(b)–(d). If a defendant is "found to be a habitual offender," the sentencing court must enhance the felony sentence and may do so by up to twenty years in some cases. I.C. § 35-50-2-8(i).

This Court has considered many times whether the habitual offender jury must be allowed to determine a defendant's ultimate habitual offender status or only whether the unrelated convictions exist. The answer depends in part on the applicability of Article 1, Section 19 of the Indiana Constitution. This provision requires that a jury in any criminal case be allowed to decide not only what the facts are but also what the law is and, consequently, how the law applies to the facts. *Holden v. State*, 788 N.E.2d 1253, 1254–55 (Ind. 2003); *Holmes v. State*, 671 N.E.2d 841, 857 (Ind. 1996), *abrogated on other grounds by Wilkes v. State*, 917 N.E.2d 675 (Ind. 2009).

The seminal decision on how Article 1, Section 19 affects habitual offender status proceedings is *Seay*. In that case, the trial court had instructed the jury that it was judge only of the facts; that is, whether the defendant had accumulated the requisite convictions. 698 N.E.2d at 733. This Court unanimously ruled this to be error. *Id.* at 737. The opinion deemed it significant that the statute provided for a jury trial: "If the legislature had intended an automatic determination of habitual offender status upon the finding of two unrelated felonies, there would be no need for a jury trial on the status determination." *Id.* at 736 (citation omitted). In other words, the Court explained, "adjudication of habitual offender status required more than simply a finding that the prerequisite prior felonies were properly proven." *Id.* at 735. The jury also had discretion to decide "whether a defendant should be given habitual offender status." *Id.* And, because the legislature had provided for a trial by jury, complete with the "beyond a reasonable doubt" standard of proof, to decide on a status carrying a potentially "severe" sentence enhancement, Article 1, Section 19 guaranteed the jury's right to determine the facts and the law. *Id.* at 736 & n.8. The jury had to have the "ability to find Seay to be a habitual offender (or not to be a habitual offender) irrespective of the uncontroverted proof of prior felonies." *Id.* at 737.

This Court stated that *Seay* "definitively established" that Section 19 "is applicable during habitual offender proceedings, and thus the jury has the power in such circumstances to determine both the law and the facts." *Parker v. State*, 698 N.E.2d 737, 742 (Ind. 1998). Just ten years later, however, the Court took a different approach.

In *Walden v. State*, this Court reiterated that "the jury is entitled to make a status determination over and above its determination of whether the predicate offenses have been established." 895 N.E.2d 1182, 1185 (Ind. 2008). However, the majority opinion set *Seay*'s holding on a different foundation: the "interplay" between the habitual offender statute and the "umbrella 'law and the facts' statute." *Id.* (citing I.C. § 35-50-2-8; I.C. § 35-37-2-2(5) (1985)). The latter statute provides that "[t]he judge shall inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law." I.C. § 35-37-2-2(5). This new rationale was an exercise of constitutional avoidance. It was unnecessary to constitutionalize the jury's right to determine the law in a habitual offender hearing, the Court reasoned, given that the "law and facts" statute also guaranteed it. 895 N.E.2d at 1185.[8]

*Seay* was correct in its holding and its original constitutional basis.[9] The legislature has provided for a jury trial in habitual offender status

---

[8] The revised, non-constitutional basis for the jury's role went unrecognized in *Sample v. State*, which reverted to reliance on "the jury's Article I, Section 19 authority." 932 N.E.2d 1230, 1233 (Ind. 2010).

[9] This determination that Article 1, Section 19 of the Indiana Constitution applies to the habitual offender jury trial is not strictly necessary to the outcome of this case. This Court will "generally avoid addressing constitutional questions if a case can be resolved on other grounds." *Girl Scouts of S. Illinois v. Vincennes Indiana Girls, Inc.*, 988 N.E.2d 250, 254 (Ind. 2013) (citations omitted). However, an exception makes sense in this case. *See, e.g., Camreta v. Greene*, 563 U.S. 692, 705–07 (2011) (noting that it may be beneficial to clarify constitutional standards, instead of resolving cases on qualified immunity grounds). The issue was fully and ably briefed and argued by appropriate parties. It concerns judicial procedure, rather than primary conduct in the world outside. And it is necessary to provide trial courts with clarity on the role of the jury, an issue that is bound to recur.

proceedings. I.C. § 35-50-2-8(h).[10] The State must prove the requisite convictions to the jury. I.C. §§ 35-50-2-8(b)–(d). But the ultimate issue is whether the defendant is "found to be a habitual offender." I.C. § 35-50-2-8(i). This scheme implicates Article 1, Section 19, which declares the jury's right to judge both the facts and the law, emphatically, in "all criminal cases whatever." This provision does not require the legislature to entrust sentence enhancement status decisions to juries. *See, e.g.*, *Smith v. State*, 825 N.E.2d 783, 786 (Ind. 2005) (repeat sexual offender status determinations need not be made by a jury). But, when a jury trial is held, the jury must be allowed to perform its constitutionally mandated functions. Thus, in the habitual offender phase, the jury may determine both whether the defendant has the convictions alleged and whether those convictions make the defendant a habitual offender as a matter of law.

## B. The amended habitual offender statute does not strip the jury of its law-determining role.

The Court of Appeals panel below held that a 2014 amendment to the habitual offender statute stripped the jury of its right to determine habitual offender status, leaving it to decide only whether the unrelated convictions exist. The statute reads more ambiguously, however, than the panel allowed.

When we interpret a statute, our first task is to "give its words their plain meaning and consider the structure of the statute as a whole." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) (citation omitted). We take account of what the statute does not say, as well as what it does. *Id.* If ambiguity remains, we seek the legislature's intent in enacting the statute. *Id.* at 1196. In discerning this intent, "we consider the objects and purposes of the statute as well as the effects and

---

[10] A jury trial is to be held in the habitual offender phase when the guilt phase was tried to a jury. I.C. § 35-50-2-8(h). This prompts the question whether Harris was statutorily entitled to a habitual offender jury trial, since he had a bench trial for the guilt phase. *See id.* However, any error in holding a jury trial was invited by the State.

repercussions of our interpretation." *State v. Int'l Bus. Machines Corp.*, 964 N.E.2d 206, 209 (Ind. 2012) (internal quotation marks and citation omitted). We also consider how other statutes bear upon the subject. *Id.*

The provision at issue is Indiana Code subsection 35-50-2-8(h), which now provides:

> If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing. If the trial was to the court or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing under IC 35-38-1-3. **The role of the jury is to determine whether the defendant has been convicted of the unrelated felonies. The state or defendant may not conduct any additional interrogation or questioning of the jury during the habitual offender part of the trial.**

Pub. L. No. 158-2013, § 661, 2013 Ind. Acts 1155, 1604–05 (bold-type language in original).

Beginning with the language and structure of the statute, it is ambiguous whether "[t]he role of the jury" is intended to be exclusively the determination of the unrelated convictions. Standing alone, the provision could be read that way because the definite article is used in specifying "[t]he role." *See Bivins v. State*, 642 N.E.2d 928, 956 (Ind. 1994) (use of "the," by contrast with "any," implies an intent to limit what is to be considered). And "[w]hen certain items or words are specified or enumerated in a statute then, by implication, other items or words not so specified or enumerated are excluded." *State v. Willits*, 773 N.E.2d 808, 813 (Ind. 2002) (internal citation and quotation marks omitted). At the same time, the provision contains no express words of exclusivity, such as "only." The sentence following, concerning the parties' "interrogation or questioning of the jury," throws no light on the matter.

Aside from its textual implications, the statute's structure counsels against reading "[t]he role of the jury" as exclusive. First, this Court has stated that there would be no need for a jury trial to determine habitual offender status if it followed automatically on a finding of the requisite convictions. *Seay*, 698 N.E.2d at 736. Second, a separate section of the statute provides expressly for the application of "[t]he procedural safeguards that apply to other criminal charges." I.C. § 35-50-2-8(l). In Indiana, the jury's right to determine the law is one of these safeguards. Indeed, it is expressly provided for by the "law and facts" statute. I.C. § 35-37-2-2(5). The habitual offender statute therefore arguably contemplates the jury performing its law-determining role.

The meaning of the statute is ambiguous and the legislature's intent uncertain. However, when one reasonable reading of an ambiguous statute would render it unconstitutional, we will prefer another reasonable reading that preserves its constitutionality. *Sims v. United States Fidelity & Guar. Co.*, 782 N.E.2d 345, 349 (Ind. 2003). We thus strike statutes down only when to do so is unavoidable. *Id.* Applying this rule, Indiana Code subsection 35-50-2-8(h) requires the jury, in reaching its verdict, to determine the existence of the requisite convictions. But this does not preclude what Article 1, Section 19 demands, namely that the jury be allowed to determine the ultimate issue of habitual offender status.[11]

---

[11] While Article 1, Section 19 is phrased in terms of the rights of the jury, it is designed to protect the liberty of defendants. *See Daily v. State*, 10 Ind. 536, 537–38 (1858); Hon. Robert D. Rucker, *The Right to Ignore the Law: Constitutional Entitlement Versus Judicial Interpretation*, 33 Val. U. L. Rev. 449, 449–54 (1999). Defendants therefore have standing to rely on it. *See Solarize Indiana, Inc. v. S. Indiana Gas and Elec. Co.*, 182 N.E.3d 212, 217 (Ind. 2022) (a claimant must have "a personal stake in the outcome of the litigation" and must "show that they have suffered or were in immediate danger of suffering a direct injury") (internal quotation marks and citation omitted).

## II. The testimony proffered by Harris was irrelevant to the existence of his convictions.

Having decided that the jury in Harris's habitual offender hearing had the right to determine his ultimate status, this opinion now considers whether this rendered his testimony relevant.

### A. Only evidence tending to prove or disprove the defendant's convictions is relevant to habitual offender status.

In *Taylor*, this Court addressed a defendant's claim that he "should have been permitted to testify about why he did not deserve to be considered a habitual criminal." 511 N.E.2d at 1040. The Court disagreed, holding unanimously that "[t]he only relevant evidence in a habitual offender proceeding is evidence that proves or disproves the defendant's prior felony convictions." *Id.* (citing *Thomas v. State*, 451 N.E.2d 651, 654 (1983)). Taylor's testimony that he "never hurt anyone" and "did not feel he was a habitual criminal" might be heard before sentencing. *Id.* But Article 1, Section 19 did not require that it be presented to the jury. *Id.* We follow this precedent, believing it remains correct even after *Seay*'s recognition of the jury's right to find a defendant not to be a habitual offender, irrespective of proof of the requisite unrelated convictions.

Generally speaking, irrelevant evidence is inadmissible. Evid. R. 402. Relevant evidence is admissible unless otherwise provided. *Id.* Evidence is relevant if it has "any tendency" to make "more or less probable" a fact that is "of consequence in determining the action." Evid. R. 401. In other words, evidence must have some probative value that is material to an issue in the case. 1 Kenneth Broun et al., *McCormick on Evidence* § 185 (8th ed. supp. 2022). Materiality "looks to the relation between the proposition that the evidence is offered to prove and the issues in the case." *Id.* When "the evidence is offered to help prove a proposition that is not a matter in issue, it is immaterial. What is 'in issue,' that is, within the range of the litigated controversy, is determined mainly by the pleadings and the substantive law." *Id.*

To the extent that relevance depends on substantive criminal law, we look to the elements and defenses set out in the statute because "the legislature is free to define the elements of crimes." *Sanchez v. State*, 749 N.E.2d 509, 524 (Ind. 2001) (Sullivan, J., concurring in result). Sentencing enhancements, like convictions, require satisfaction of the elements defined by the legislature. *See McAlpin v. State*, 80 N.E.3d 157, 162 (Ind. 2017) (analyzing an "element" of the drug-free-zone enhancement). Just as the elements of robbery are set forth at Indiana Code section 35-42-5-1, so the elements of habitual offender status are set forth at Indiana Code subsections 35-50-2-8(b)–(d) (defining when a person "is a habitual offender"). In the latter provisions, we find that the elements of habitual offender status are the requisite prior, unrelated convictions. *Id.* The specific requirements for these convictions depend on the felony level of the defendant's present conviction. *Id.* Relevance in a habitual offender proceeding depends, therefore, on whether the evidence in question tends to prove or disprove the necessary unrelated convictions as alleged by the State.[12]

We appreciate the strength of the arguments made by Harris and by Chief Justice Rush's opinion dissenting from our decision on this issue. Evidence beyond the bare fact of a defendant's convictions would inform the jury in making a discretionary habitual offender status determination. However, the legislature may generally limit the factual matters a jury can consider in determining an ultimate issue. *See Sanchez*, 749 N.E.2d at 521 (Article 1, Section 19 permits the legislature to provide that voluntary intoxication does not negate criminal intent); *Bivins*, 642 N.E.2d at 956 (recognizing the intent of the death penalty statute to "limit consideration to statutorily specified aggravating circumstances."). A statute that limits what evidence is admissible in the habitual offender phase does not offend the jury's right to determine the law. That right simply means that the jury may, after receiving proof of the requisite convictions, decide not to find habitual offender status. *Seay*, 698 N.E.2d at 734. This responsibility

---

[12] Other evidence may be relevant in the context of a permissible collateral attack on an unrelated conviction. *See* I.C. § 35-50-2-8(k); *Dexter v. State*, 959 N.E.2d 235, 238 (Ind. 2012).

can be discharged without evidence of any facts beyond a defendant's convictions. Article 1, Section 19 is not violated by enforcement of the rule of relevance.

Our examination of the statutory scheme involved here persuades us that the legislature did not intend the jury to consider a broad range of circumstances beyond the defendant's convictions. The habitual offender statute addresses the status hearing at Indiana Code subsection 35-50-2-8(h), the provision that was interpreted in Part I.B, *supra*. When a defendant has been found guilty by a jury, "the jury shall reconvene for the sentencing hearing." I.C. § 35-50-2-8(h). When there has been a bench trial or guilty plea, however, "the court alone shall conduct the sentencing hearing under IC 35-38-1-3." *Id.* Indiana Code section 35-38-1-3 is the statute providing for presentence hearings, at which trial courts hear "facts and circumstances relevant to sentencing" and consider "aggravating circumstances or mitigating circumstances." Under the bifurcated scheme for habitual offender determinations, the jury is not intended to participate in the presentence hearing. By extension, the jury is not intended to hear about aggravating and mitigating circumstances when it determines habitual offender status. This conclusion is reinforced by Indiana Code subsection 35-50-2-8(i), which provides that the sentence to be imposed on a habitual offender is for the trial court alone to decide. The jury need not even be told about the sentencing implications of habitual offender status. *Seay*, 698 N.E.2d at 734. Under the statutory scheme, therefore, the jury determines habitual offender status without hearing about the wider circumstances of the defendant's crimes.

The habitual offender statute may also be contrasted with Indiana Code section 35-50-2-9 (2016), this state's death penalty statute. The latter provides for a jury to hear evidence of statutory aggravating and mitigating circumstances, and then to recommend whether a defendant convicted of murder should receive an enhanced penalty of death, life imprisonment without parole, or neither. I.C. §§ 35-50-2-9(d)–(e). And it expressly allows the presentation of "[a]ny other circumstances appropriate for consideration" in mitigation. I.C. § 35-50-2-9(c)(8). This Court has described the statute as giving the jury a "mercy option." *Pope v. State*, 737 N.E.2d 374, 379 (Ind. 2000).

The habitual offender statute does not provide for a similar hearing concerning all the circumstances. There is no indication in it that defendants may present mitigating evidence in hope of persuading the jury to choose mercy—nor indeed that the State may present aggravating evidence. Reading the statute to provide a broad status hearing, even one limited to the circumstances of the defendant's crimes, could easily entail extensive and contested evidence on matters such as the defendant's mental state, his degree of participation and culpability, the severity of the loss or injury caused, victim impact, and so on. All this material may be appropriate for consideration when determining what sentence to impose. But, in the habitual offender context, the legislature did not contemplate the jury's participation in such a wide-ranging and involved proceeding, akin to either a presentence hearing or a death penalty hearing. We take it that the jury is intended to hear evidence bearing on the statutory elements of habitual offender status. Thus, only evidence concerning the existence of the defendant's convictions is relevant for presentation to the jury.

We perceive no necessary conflict between today's holding and that of *Hollowell*. In that case, the State had introduced the chronological case summary (CCS or trial court docket) from one of the defendant's prior convictions. 753 N.E.2d at 616. The CCS showed that, although the defendant was convicted of battery, he had initially been charged with attempted murder. *Id.* It also contained an incorrect statement that the defendant was convicted of attempted murder and detailed numerous probation violations. *Id.* & n.7. Furthermore, the defendant had stipulated to the conviction. *Id.* at 616. Nevertheless, a majority of this Court held that the CCS was relevant evidence for proving the defendant's "predicate felonies," and not unfairly prejudicial. *Id.* at 617.[13] The opinion then stated: "Because 'the jury is the judge of both the law and facts as to [the habitual offender determination],' the facts regarding the predicate convictions are

---

[13] Justice Rucker dissented in part (with Justice Dickson joining him) on the grounds that admitting the CCS likely eliminated the defendant's chance of obtaining mercy. 753 N.E.2d at 618.

relevant to the jury's decision whether or not to find a defendant to be a habitual offender." *Id.* (quoting *Seay*, 698 N.E.2d at 737). There is some ambiguity in the intended scope of the phrase "the facts regarding the predicate convictions." We read it narrowly. The CCS did not provide any potentially pertinent information about the circumstances of the conviction, other than the fact of the conviction itself, so the holding did not require any broadening of relevance beyond the existence of the convictions alleged.[14] And the opinion did not explicitly reconsider and disavow this Court's decision in *Taylor*.[15]

To allow the circumstances of prior convictions to come in would contradict the purpose of giving the jury the right to determine habitual offender status. The jury can consider mercy because it enjoys "more latitude in making a habitual offender determination than in determining guilt or innocence." *Walden*, 895 N.E.2d at 1186. The mercy option is provided "because the stakes are so high" when a defendant faces a habitual offender enhancement. *Id.* at 1184.[16] The circumstances of crimes, however, often paint the defendant in a poor light. The chance for mercy would be undermined if the State were permitted to introduce evidence showing not only that a defendant satisfied the definition of habitual offender, but, also, that he deserved to be deemed one because of additional circumstances.

---

[14] The defendant's unproven attempted murder charge and his probation violations could not possibly be circumstances relevant to his habitual offender status.

[15] We also find no conflict with *Warren v. State*, which held that a habitual offender jury which did not try the underlying felony could be informed of what offense the defendant had been convicted for, namely murder. 769 N.E.2d 170, 171–72 (Ind. 2002). The jury could hear the "nature" or "identity" of the conviction, not its circumstances. *Id.* at 172.

[16] In *Holden*, this Court examined whether Article 1, Section 19 sanctions a form of jury nullification in a guilt-phase trial. 788 N.E.2d at 1254. The decision distinguished between the jury determining the law, which was approved, and disregarding it, which was not. *Id.* at 1254–55. This distinction is not involved in today's decision because the habitual offender statute provides the jury "slightly more leeway than *Holden* authorizes in the guilt phase." *See Walden*, 895 N.E.2d at 1184. The habitual offender jury does not have to impose habitual offender status even when it finds that the defendant has the necessary convictions as defined by statute. *Id.* at 1185.

Of course, this decision leaves defendants with fewer resources than they might wish for encouraging a jury to show mercy. But nothing in the decision precludes a defendant from arguing that their present and unrelated convictions are not so serious, recent, or similar in nature as to warrant habitual offender status. And, since the habitual offender jury will ordinarily have tried the present conviction, the parties may refer in argument to the circumstances of that felony, to the extent that they came out in the first phase. A defendant may sometimes convince a jury that it would simply be too harsh to pronounce them a habitual criminal. In this way, the jury can "make sure that the substantive law as written does not become overreaching so as to defeat reasonable goals of justice." *Id.* at 1188 (Rucker, J., dissenting).

## B. Harris was not entitled to present the circumstances of his crimes in an effort to persuade the jury to show mercy.

The habitual offender statute and the charging information filed by the State determined the issues in the habitual offender phase of this case. A person convicted of a Level 3 felony "is a habitual offender" if the State proves two prior, unrelated felonies, at least one of which is not a Level 6 or Class D felony. I.C. § 35-50-2-8(b). The information here alleged, and Harris admitted, two qualifying felonies. Evidence tending to prove or disprove his alleged convictions was relevant. Any other evidence was immaterial and irrelevant.

We agree with the trial court that none of the testimony Harris proffered was relevant. He attempted to testify about the circumstances of two of his crimes, namely his present robbery conviction and a prior, unrelated robbery conviction. As to his present conviction, Harris would have told the jury about his PTSD, medication difficulties, and intent to rehabilitate himself. Because this testimony could not serve to disprove the existence of Harris's unrelated convictions, the trial court properly excluded it as irrelevant. And, by waiving a jury trial in the guilt phase, Harris turned down his opportunity for a jury to hear the circumstances of his crimes of conviction. As to his unrelated robbery, Harris would have

told the jury that he was in fact innocent and only pled guilty because he did not know of his right to a trial. Harris does not dispute that the trial court correctly excluded this testimony as a prohibited collateral attack on a prior conviction. *See* I.C. § 35-50-2-8(k); *Dexter v. State*, 959 N.E.2d 235, 238 (Ind. 2012) (a collateral attack is permitted during habitual offender proceedings only if "the court documents on their face raise a presumption that the conviction is constitutionally infirm").

## III. Neither Article 1, Section 13 nor federal constitutional protections entitled Harris to present his testimony.

Article 1, Section 13 of the Indiana Constitution specifically guarantees a criminal defendant's right "to be heard by himself and counsel." This provision "places a unique value upon the desire of an individual accused of a crime to speak out personally in the courtroom and state what in his mind constitutes a predicate for his innocence of the charges." *Sanchez*, 749 N.E.2d at 520 (internal quotation marks and citation omitted). Several provisions of the federal constitution, including the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment, likewise protect a defendant's "right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987). However, as this Court explained in *Sanchez*, these rights are subject to "'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" 749 N.E.2d at 521 (quoting *Roach*, 695 N.E.2d at 939). The evidentiary rule of relevance is one such limitation. *Id.* We do not find the rule, as applied here, to be "arbitrary or disproportionate to the purposes" it serves, namely to focus the jury's attention on the material facts of the prior convictions. *See Rock*, 483 U.S. at 56. Because testimony to the circumstances of a defendant's crimes is irrelevant to the habitual offender status determination, Harris had no constitutional right to present it.

# Conclusion

The jury in a habitual offender proceeding must be allowed to make the ultimate legal determination of whether the defendant has the status of habitual offender. However, only evidence of the defendant's alleged convictions is relevant to that determination. A defendant has no constitutional right to present irrelevant evidence. Therefore, the trial court did not err in excluding Harris's testimony concerning the circumstances of his crimes.

Transfer is hereby granted, vacating Part II of the Court of Appeals opinion. Harris's habitual offender status determination is affirmed. Parts I and III of the opinion below are summarily affirmed. The case is remanded to the trial court for attachment of the habitual offender sentence enhancement to the sentence for robbery, as ordered in Part III of the opinion below.

Molter, J., concurs in Parts II and III, except the last two paragraphs of Part II.A, and in the judgment, with separate opinion in which Massa, J., joins.

Rush, C.J., concurs in Part I and dissents from Parts II and III, with separate opinion in which Slaughter, J., joins in part.

Slaughter, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT
Joel M. Schumm
Indianapolis, Indiana

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

George P. Sherman

Office of the Attorney General

Indianapolis, Indiana

**Molter, J., concurring in part and in the judgment.**

I concur in the Court's judgment and Parts II (except for the last two paragraphs of II.A) and III of the lead opinion. As Part II explains, the evidence Harris proffered was irrelevant, so the trial court did not err by excluding it.

Only relevant evidence is admissible; evidence is relevant only if it makes a material fact more or less probable; and materiality is measured by the claims and defenses at issue. *Jenkins v. State*, 627 N.E.2d 789, 798 (Ind. 1993). At issue here is the State's allegation that Harris is a habitual offender, so we look to the habitual offender statute, Indiana Code section 35-50-2-8, to determine what is material. All that is material under that statute is whether the defendant has qualifying prior convictions, and because the evidence Harris proffered—his own testimony about his mental health struggles, his reaction to medication, and his efforts at rehabilitation—was not material to whether he has qualifying prior convictions, the trial court properly excluded the evidence. The lead opinion resolves this appeal through a straightforward application of our Court's precedents evaluating the relevancy of evidence in habitual offender proceedings, so I would end the analysis there rather than wading into the constitutional analysis that the lead opinion acknowledges makes no difference in how the Court resolves this appeal.

I.

Part II.A of the lead opinion begins by appropriately acknowledging we already settled this evidentiary analysis long ago in *Taylor v. State*, where Chief Justice Shepard wrote for a unanimous Court that "[t]he only relevant evidence in a habitual offender proceeding is evidence that proves or disproves the defendant's prior felony convictions." 511 N.E.2d 1036, 1040 (Ind. 1987). Like this case, the defendant in *Taylor* wished "to testify about why he did not deserve to be considered a habitual criminal at that phase of trial," and like this case, the Court held that his proposed testimony minimizing the severity of his criminal history could be considered at sentencing, but it was irrelevant during the habitual offender phase. *Id.* Since that time, the General Assembly has more clearly embraced *Taylor*'s view by amending the habitual offender statute to say

that "[t]he role of the jury is to determine whether the defendant has been convicted of the unrelated felonies." Ind. Code § 35-50-2-8(h); *see* Pub. L. No. 158-2013, § 661, 2013 Ind. Acts 1155, 1604. I would therefore resolve this case based on *Taylor* and stop there.

Instead, Part I goes a step further. Article 1, Section 19 of the Indiana Constitution provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." In *Seay v. State*, 698 N.E.2d 732, 736 (Ind. 1998), we suggested that provision applies to determining whether a habitual offender enhancement applies, but we later disclaimed that suggestion as dicta in *Walden v. State*, 895 N.E.2d 1182, 1185 (Ind. 2008) ("This statement was not necessary to our holding . . . . We need not and should not have identified the Indiana Constitution as additional support for the holding and consider those comments to be obiter dicta."). Now, Part I revisits the *Seay* dicta, but there is no need to do so here.

We generally avoid constitutional questions when the appeal can be resolved on other grounds. *See Ind. Land Tr. Co. v. XL Inv. Props., LLC*, 155 N.E.3d 1177, 1182–83 (Ind. 2020) ("Observing the longstanding principle of constitutional avoidance that weighs against deciding constitutional questions not absolutely necessary to a merits disposition, we find a narrower path to resolution of this case." (quotations omitted)). Part II demonstrates this appeal can be resolved without looking any further than our Rules of Evidence and the habitual offender statute. Whether one embraces the Court of Appeals' view that the General Assembly assigned a more limited role to the jury and our Constitution permits that, or the lead opinion's view that the General Assembly assigned the jury a more expansive role which the Constitution requires, both the Court of Appeals and the lead opinion reach the same conclusion: Harris's proffered evidence was irrelevant. So, Article 1, Section 19 makes no difference in how the Court resolves this appeal.

Constitutional avoidance is especially prudent here. Even before we abandoned the dicta the lead opinion revisits today, *Seay* began by acknowledging "that the issue of the jury's role in the habitual offender phase of an Indiana criminal trial has been addressed in a number of opinions which are not entirely reconcilable." 698 N.E.2d at 734. Now, it

may be difficult to reconcile the conclusion in the lead opinion that Article 1, Section 19 applies to the habitual offender phase with our previous conclusion that the General Assembly can exclude the jury from that phase completely. *See Smith v. State*, 825 N.E.2d 783, 786 (Ind. 2005) (holding that the General Assembly could have a judge rather than a jury decide whether a sentence enhancement applies based on prior convictions). Law in this area has long been tangled, and I worry that by unnecessarily pulling on this string we are tightening rather than loosening the knot.

## II.

The lead opinion proposes a new exception to the constitutional avoidance doctrine, analogizing to federal qualified immunity cases to create an exception for constitutional issues which are "fully and ably briefed and argued by appropriate parties," which concern "judicial procedure, rather than primary conduct in the world outside," and which will inevitably recur. *Ante*, at 9 n.9. I do not think our case law or federal case law supports such an exception, including because the qualified immunity affirmative defense to federal civil rights claims under 42 U.S.C. § 1983 is not analogous to the state habitual offender enhancement. Justice Slaughter's dissent likewise disclaims any such exception, and I do not read the Chief Justice's dissent as embracing this exception either. Instead, I understand the Chief Justice's dissent to argue that while the lead opinion's Article 1, Section 19 analysis makes no difference in how the Court resolves this appeal, it should make a difference. But that conclusion, in my view, rests on a few mistaken premises.

First, I disagree that our jurisprudence reflects a failure to seriously analyze Article 1, Section 19. Hundreds of opinions from our Court and the Court of Appeals cite that provision, and many of the cases the dissent discusses carefully analyze it. Justice Rucker wrote a law review article devoted entirely to analyzing Article 1, Section 19. Hon. Robert D. Rucker, *The Right to Ignore the Law: Constitutional Entitlement Versus Judicial Interpretation*, 33 Val. U. L. Rev. 449 (1999). After writing that article, he wrote an opinion for the Court explaining that "[t]he general thrust of the article is that Article I, Section 19 amounts to a constitutionally permissible

form of jury nullification." *Holden v. State*, 788 N.E.2d 1253, 1254 (Ind. 2003). But then he and his colleagues went even deeper into their constitutional analysis, and they unanimously concluded: "Although there may be some value in instructing Indiana jurors that they have a right to 'refuse to enforce the law's harshness when justice so requires,' *the source of that right cannot be found in Article I, Section 19 of the Indiana Constitution*." *Id.* at 1255 (emphasis added). They further explained that "[n]otwithstanding Article 1, Section 19 of the Indiana Constitution, a jury has no more right to ignore the law than it has to ignore the facts in a case." *Id.* (quotations omitted).

There may be fair criticism of our precedents analyzing habitual offender proceedings, including that our Court has acknowledged some of them are contradictory. *Seay*, 698 N.E.2d at 734. And we continue the volley today: After we held Article 1, Section 19 does not apply to habitual offender enhancements, *Taylor*, 511 N.E.2d at 1040 ("The habitual offender finding is a means of sentencing and is not a determination of law."), we said it does, *Seay*, 698 N.E.2d at 734–35 (stating that Article 1, Section 19 applies to "the status determination in habitual offender proceedings"); then we reversed course, explaining our previous suggestion that Article 1, Section 19 applies was mere dicta, *Walden*, 895 N.E.2d at 1185 ("This statement [in *Seay*] was not necessary to our holding . . . . We need not and should not have identified the Indiana Constitution as additional support for the holding and consider those comments to be obiter dicta."); and now, through more dicta, the lead opinion reiterates the *Seay* dicta our Court previously disavowed. But whatever flaws this approach reveals, they do not include a failure to grapple with Article 1, Section 19.

Second, I do not understand *Taylor* to be "long-repudiated." *Post*, at 1 (opinion of Rush, C.J.). Our Court has cited *Taylor* fifteen times and has never even called it into question or suggested any part of it is abrogated, let alone overruled or otherwise repudiated it. Even *Seay* cited *Taylor* favorably for its analysis of Article 1, Section 19. *Seay*, 698 N.E.2d at 734 (citing *Taylor* for the proposition that "we have long held that art. I, § 19, does not apply in penalty determinations" (emphasis omitted)). True, the twenty-six appellate opinions citing *Taylor* rely on the case for reasons unrelated to relevancy. But *Taylor* was the last in a line of unanimous

opinions going back to the enactment of the habitual offender statute at issue. *Taylor* reaffirmed yet again a straightforward relevancy analysis, so there has been little need since to cite it for that purpose.

To be sure, the opinions in *Hollowell v. State*, 753 N.E.2d 612, 617 (Ind. 2001), and *Warren v. State*, 769 N.E.2d 170, 171–72 (Ind. 2002), did not cite or discuss *Taylor*, and they instead cited *Seay* for the proposition that because the jury is the judge of both the law and facts, the jury can be informed of facts related to the predicate convictions so long as the evidence is admissible under the Rules of Evidence. I do not read those cases as overruling *sub silentio* the application of the Rules of Evidence in *Taylor*, and those cases predate our statement in *Walden* receding from *Seay*'s constitutional analysis as dicta. My dissenting colleagues have a different view, reading *Sample v. State*, 932 N.E.2d 1230, 1233 (Ind. 2010), as overruling *Walden sub silentio*. But given that *Walden* expressly held that *Seay*'s Article 1, Section 19 analysis was dicta after *Seay* already acknowledged the Court's conflicting prior precedents, I am reluctant to read a unanimous decision just two years after *Walden* as implicitly reversing course yet again. In any event, even if there is a conflict in our case law which needs to be resolved, *Taylor* presents the more straightforward application of our Rules of Evidence consistent with how those rules generally apply in the criminal context.

Third, my dissenting colleagues read my relevancy analysis as based on "legislative intent." *Post*, at 13 (opinion of Rush, C.J.). But when analyzing the habitual offender statute, I have only relied on statutory text, and I simply suggest that, as with any allegation the State makes that someone has run afoul of a criminal statute, we should look to the words in the legislature's statute relating to the alleged criminal behavior, discern the elements those words establish, and then evaluate proffered evidence to determine whether it is material to those elements.

The *Seay* Court, I acknowledge, explained that "[i]f the legislature had intended an automatic determination of habitual offender status upon the finding of two unrelated felonies, there would be no need for a jury trial on the status determination." *Id.* at 1 (quoting *Seay*, 698 N.E.2d at 736). But after our Court said that, the General Assembly amended the habitual

offender statute to state explicitly that all the jury is supposed to consider is whether the defendant has the required unrelated felonies. I.C. § 35-50-2-8(h) ("The role of the jury is to determine whether the defendant has been convicted of the unrelated felonies.").

Fourth, the Chief Justice's dissent explains that a jury deciding whether the State has satisfied its burden of proving the defendant is a habitual offender must decide two issues, not one: (1) whether the defendant has accumulated the requisite number of convictions, and (2) "whether, based on those convictions and the primary felony, the defendant should be given the status of habitual offender." *Post*, at 1 (opinion of Rush, C.J.). All agree the first element derives from the habitual offender statute. The dissent says the second element derives from Article 1, Section 19's requirement that "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts." But it is unclear how Article 1, Section 19—which by its express terms applies to *all* criminal cases whatever—is the source of an additional element *only* for habitual offender enhancements.

Take this case, for example. One of Harris's charges was Level 3 felony armed robbery, and the elements for that offense are (1) knowingly or intentionally (2) taking property from another person (3) by using or threatening force or by putting any person in fear (4) while armed with a deadly weapon or causing bodily injury. I.C. § 35-42-5-1(a). There is no suggestion that Article 1, Section 19 somehow adds an element so that the fact finder must also decide whether Harris should be tagged with the status of being a robber. And there is no reason to add that element for the habitual offender enhancement either.

Article 1, Section 19 is especially ill suited to add an element to the habitual offender enhancement because we have held that "[t]he habitual offender finding is a means of sentencing and is not a determination of law," *Taylor*, 511 N.E.2d at 1040, and we have concluded (and the lead opinion reaffirms) that the General Assembly can empower a judge rather than a jury to decide whether a sentence enhancement applies based on prior convictions, *Smith*, 825 N.E.2d at 786. It is difficult to square the notion that the Article 1, Section 19 jury right adds an extra element for

habitual offender enhancements with the notion that Article 1, Section 19 permits the General Assembly to eliminate the jury's role completely.

Thus, the statement in the unanimous *Taylor* opinion that "[t]he only relevant evidence in a habitual offender proceeding is evidence that proves or disproves the defendant's prior felony convictions" is consistent with how we typically assess relevancy in the criminal context. 511 N.E.2d at 1040. It neither "dilutes" nor "nullifies" the jury's role. *Post*, at 10 (opinion of Rush, C.J.). Rather, it leaves the jury's role the same as with any other criminal allegation.

III.

Our Court's precedents establish that the trial court properly excluded Harris's proffered evidence as irrelevant. I therefore concur in the judgment.

Massa, J., joins.

**Rush, C.J., concurring in part and dissenting in part.**

I concur in Part I in which the lead opinion concludes that, under Article 1, Section 19, the jury in a habitual-offender proceeding must decide two issues: (1) whether the defendant has accumulated the requisite number of prior unrelated felony convictions; and (2) whether, based on those convictions and the primary felony, the defendant should be given the status of habitual offender. However, I respectfully dissent from Part II in which the lead opinion concludes the only evidence relevant to those two issues is that tending "to prove or disprove the necessary unrelated convictions." *Ante*, at 14 (opinion of Goff, J.). For similar reasons, I also respectfully dissent from Part III. While I understand the decision to address Harris's claims despite waiver, I disagree that all "testimony to the circumstances of a defendant's crimes is irrelevant to the habitual offender status determination." *Id.* at 19.

As this Court aptly recognized over two decades ago, "If the legislature had intended an automatic determination of habitual offender status upon the finding of two unrelated felonies, there would be no need for a jury trial on the status determination." *Seay v. State*, 698 N.E.2d 732, 736 (Ind. 1998). But today, three of my colleagues reject that well-settled principle and authorize such an automatic determination—particularly in cases like this where the parties stipulate to the prior convictions.

To be sure, as the lead opinion points out, defendants have "no constitutional right to present irrelevant evidence." *Ante*, at 20 (opinion of Goff, J.). But the relevancy of evidence must be analyzed in relation to the issues to be determined. And, as the lead opinion correctly holds, juries in habitual-offender proceedings have the constitutional right to independently decide two issues. Yet, both the lead and concurring opinions erroneously conclude that the jury is not entitled to consider **any** evidence relevant to aid the jury in deciding the second issue. This position, as shown below, improperly resurrects long-repudiated precedent and conflicts with not only caselaw analyzing Article 1, Section 19 but also with the provision's plain text and the history surrounding its ratification.

Article 1, Section 19 unequivocally confers on juries broad constitutional authority: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Ind. Const. art. 1, § 19. This provision, embedded within our Bill of Rights, enshrines an "essential value[] which the legislature may qualify but not alienate." *Price v. State*, 622 N.E.2d 954, 960 (Ind. 1993). Yet, as recognized by my former colleague Justice Rucker nearly twenty-five years ago, Article 1, Section 19 "has never received serious constitutional analysis." Honorable Robert D. Rucker, *The Right to Ignore the Law: Constitutional Entitlement Versus Judicial Interpretation*, 33 Val. U. L. Rev. 449, 474 (1999). His observation remains true today.

This case presents an opportunity to conduct such an analysis. History reveals that our framers and ratifiers intended for Article 1, Section 19 to confer on criminal juries distinct, broad constitutional authority. And our precedent applying the provision establishes its importance, clarifies the scope of the jury's constitutional right in determining whether a defendant is a habitual offender, and illustrates fundamental flaws in both the lead and concurring opinions' relevancy analyses. I thus begin with a historical analysis of Section 19.

## I.  The text of Article 1, Section 19, its history, and precedent applying the provision reveal that criminal juries have distinct constitutional authority.

When analyzing provisions of the Indiana Constitution, our approach is well-settled. We examine "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our Constitution, and case law interpreting the specific provisions." *Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 27 N.E.3d 737, 741 (Ind. 2015) (quoting *Nagy ex rel. Nagy v. Evansville–Vanderburgh Sch. Corp.*, 844 N.E.2d 481, 484 (Ind. 2006)). In undertaking this examination, we carefully defer to the provision's language "as though every word had

been hammered into place." *Holcomb v. Bray*, 187 N.E.3d 1268, 1277 (Ind. 2022) (quoting *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013)).

## A. The framers and ratifiers of our Constitution intended an expansive role for juries in criminal cases.

During the colonial era, Americans were generally skeptical of judges and preferred that their rights and liberties rest in the hands of their peers. *See, e.g.*, Jeffrey S. Sutton, *Who Decides? States as Laboratories of Constitutional Experimentation* 34–35 (2022). It is thus not surprising that "early state constitutions enshrined the right to trial by jury." *Id.* at 34. Indeed, Indiana's 1816 Constitution enshrined that right in both civil and criminal cases. Ind. Const. of 1816, art. 1, §§ 5, 13. And it also gave juries the authority to determine the law and the facts. *Id.* § 10. Though this authority was limited to "indictments for libels" and to "the direction of the court," *id.*, these restrictions were short-lived.

In 1850, delegates from across Indiana convened to amend the 1816 Constitution. Most of the delegates were Jacksonian Democrats who exhibited a "fear of governmental power" and a "faith in the people." Rucker, *supra*, at 476. Consistent with these principles, the delegates during the 1850–51 constitutional convention expanded "the Bill of Rights from that which existed under" our first Constitution. *Id.* at 475. Article 1, Section 10 is one such example. And this provision underwent significant revision, resulting in an expanded role for juries in criminal cases.

Notably, the framers and ratifiers rejected an early proposal to ensure juries lacked a law-determining role in criminal cases. Just four days after the convention assembled, a resolution—referred to the committee on law reform—was offered to "enquire into the expediency of engrafting on the Constitution a provision that the jury in criminal cases **find upon the facts of the issue only**." *Journal of the Convention of the People of the State of Indiana to Amend the Constitution* 60 (Indianapolis, A.H. Brown 1851) (emphasis added) [hereinafter *Journal*]. The committee reported back weeks later deeming the resolution "inexpedient" and recommending that it "lie on the table." *Id.* at 225. The delegates agreed. *Id.* at 226.

Meanwhile, when the committee on rights and privileges first submitted proposed revisions to Article 1, Section 10, the committee struck language from the provision. The revised version read, "In all prosecutions for libel, the truth of the matter alleged to be libellous may be given in [] justification, and the jury shall have the right to determine the law and the facts." *Id.* at 187. So, while the jury's constitutional authority was arguably still limited to libel prosecutions, it was no longer confined by the "direction of the court." Weeks later, the revised version was read a second time and, with no amendments offered, engrossed for a third reading. *Id.* at 571.

Upon that third reading, delegate Henry P. Thornton of Floyd County motioned to recommit Section 10, expressing that it "is hardly full enough." 2 *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana* 1389 (Indianapolis, A.H. Brown 1851) [hereinafter *Debates*]. More specifically, while the provision guarded "the rights of individuals who are prosecuted for libel criminally," he was concerned that it was "liable to misconstruction" by potentially precluding a party in a civil case from offering truth as a defense. *Id.* In arguing for modification, he noted the "well settled law, that, in a criminal case, the jury has an unquestionable right to decide upon questions of law as well as of fact, although they may differ from the court in so doing." *Id.*; *see Warren v. State*, 4 Blackf. 150, 150–51 (Ind. 1836) (per curiam). To both engraft that well-settled law and ensure the jury had the same authority in civil libel actions, Delegate Thornton proposed the following amendment: In all prosecutions for libel, **as with any criminal so with any civil case**, the truth of the matter alleged to be libelous may be given in justification, and the jury shall have the right **in all criminal cases** to determine the law and the facts. *Debates*, *supra*, at 1389. The amendment passed without further discussion. *Id.*; *Journal*, *supra*, at 579.

One month later, the committee on revision, arrangement, and phraseology reported to the delegates several proposed constitutional provisions. *Journal*, *supra*, at 866–73. In that report, the committee retained some of the previously accepted language in Article 1, Section 10, which declared, "In all prosecutions for libel, the truth of the matters alleged to be libellous, may be given in justification." *Id.* at 872. And the committee

placed a new requirement in Article 1, Section 19, which declared, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." *Id.* The delegates concurred in the report, and the two provisions were ultimately adopted. *Id.* at 881; *Debates*, *supra*, at 1975, 2067.

This history reveals that our framers and ratifiers intended to confer significant authority on juries in criminal cases. The delegates rejected a limiting proposal and, by separate provision, enshrined the right of a criminal jury to determine the law and the facts "[i]n all criminal cases whatever," Ind. Const. art. 1, § 19, crystallizing their intent that this authority apply in all types of criminal cases—without limitation. *Cf. City Chapel Evangelical Free Inc. v. City of South Bend*, 744 N.E.2d 443, 448 (Ind. 2001) (concluding that "inclusion of the phrase 'in any case whatever'" in Article 1, Section 3 demonstrated "the framers' and ratifiers' intent to provide unrestrained protection for the articulated values"). In fact, only three other state constitutions enshrine this right to jurors, but none of their respective provisions define the scope of the jury's right as broadly as our unique provision. *Compare* Ind. Const. art. 1, § 19, *with* Md. Const. Decl. of Rts., art. 23 ("In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."), Or. Const. art. I, § 16 ("In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law, and the right of new trial, as in civil cases."), *and* Ga. Const. art. I, § 1, para. 11(a) ("In criminal cases . . . the jury shall be the judges of the law and the facts.").

In the years following the convention, our precedent routinely recognized the broad scope of a jury's authority under Article 1, Section 19 even though the Court eventually began to impose limitations.

## B. Following the adoption of Article 1, Section 19, this Court consistently recognized the provision's importance and scope but ultimately curtailed the jury's authority relating to instructions it receives.

During the mid-to-late 1800s, the Court frequently acknowledged the jury's constitutional right to determine the law and the facts in criminal cases by upholding jury instructions as well as arguments from counsel invoking the right and by disapproving of jury instructions impairing it. *See, e.g., Carter v. State*, 2 Ind. 617, 619 (1851); *Lynch v. State*, 9 Ind. 541, 541 (1857); *Williams v. State*, 10 Ind. 503, 505 (1858); *McDonald v. State*, 63 Ind. 544, 546–47 (1878); *Nuzum v. State*, 88 Ind. 599, 600–01 (1883); *Hudelson v. State*, 94 Ind. 426, 429–31 (1884).

In the 1920s and 1930s, however, limitations were imposed on the jury's authority. The Court, for example, declared that Article 1, Section 19 did not extend to questions concerning the admissibility of evidence, *Harlan v. State*, 190 Ind. 322, 130 N.E. 413, 418 (1921), did not include a right to make law, *Trainer v. State*, 198 Ind. 502, 154 N.E. 273, 275 (1926), and did not mean the jury had the right to fix punishment for crimes, *Mack v. State*, 203 Ind. 355, 180 N.E. 279, 283 (1932).

Following these decisions, precedent applying Article 1, Section 19 has predominantly concerned appeals relating to jury instructions. In 1957, for example, the Court held that a trial court properly refused to instruct jurors that they were "the exclusive judges of the law" and that they had "a right to disregard" the court's other instructions. *Beavers v. State*, 236 Ind. 549, 141 N.E.2d 118, 120, 123 (1957). In reaching that decision, the Court reasoned, "Neither the jury nor the judge has a 'right' to disregard the law. It may have the *power* to commit error or do wrong but not the *right*." *Id.* at 123. And although the Court accepted that "the jury has the power to go its own way[] and determine the law for itself when it renders a verdict," *id.* at 125, it characterized Article 1, Section 19 as an "archaic constitutional provision," *id.* at 121.

A decade later, however, in *Pritchard v. State*, 248 Ind. 566, 230 N.E.2d 416, 419–21 (1967), we clarified the *Beavers* Court's holding and criticized

its characterization of Article 1, Section 19. There, the Court reversed a defendant's conviction due to an instruction that required the jury to find the defendant guilty upon finding certain facts. 230 N.E.2d at 421. We held that such a "mandatory instruction in a criminal case . . . clearly invades the constitutional province of the jury." *Id.* In reaching that conclusion, the Court explained that *Beavers* simply stood for the proposition that a defendant is "not entitled to an instruction telling the jury that they may 'disregard the law.'" *Id.* at 420. While it's true that "the jury is, not strictly speaking, the sole judge of the law" in every aspect, we clarified that jurors nevertheless "have the right to determine the law pursuant to the right conferred by the Constitution." *Id.* Acknowledging that right enshrined in Article 1, Section 19, the Court then renounced *Beavers*'s criticism of the provision, opining that it "is far from an outmoded, archaic anachronism. Rather, despite its venerable age, it appears to be in the vanguard of modern thinking with regard to the full protection of the rights of the criminal defendant." *Id.* at 421.

After *Pritchard*, we consistently found no error in cases when the instructions, considered in their entirety, recognized the jury's constitutional right under Article 1, Section 19 and did not impermissibly invade that right. *Holliday v. State*, 254 Ind. 85, 257 N.E.2d 679, 682 (1970); *Loftis v. State*, 256 Ind. 417, 269 N.E.2d 746, 747–48 (1971); *Barker v. State*, 440 N.E.2d 664, 670–72 (Ind. 1982). It was against this historical backdrop that we began considering the application of Article 1, Section 19 in habitual-offender proceedings before a jury.

## II. Article 1, Section 19 requires the jury to make separate determinations in a habitual-offender proceeding.

The General Assembly first enacted the habitual-offender statute at issue here—Indiana Code section 35-50-2-8—in 1977. Pub. L. No. 340, § 121, 1977 Ind. Acts 1533, 1594–95. In a trio of opinions three years later, this Court addressed, and ultimately rejected, several constitutional challenges to the statute. *Wise v. State*, 272 Ind. 498, 400 N.E.2d 114, 118–19

(1980); *Comstock v. State*, 273 Ind. 259, 406 N.E.2d 1164, 1167 (1980); *Ferguson v. State*, 273 Ind. 468, 405 N.E.2d 902, 908–09 (1980).

Then, during the mid-1980s, we issued a series of opinions addressing relevant evidence in habitual-offender proceedings. Those cases concluded—as the lead and concurring opinions do here—that the only evidence relevant in such a proceeding is that which shows whether the defendant has been convicted of two prior unrelated felonies. *Owens v. State*, 427 N.E.2d 880, 886–87 (Ind. 1981); *Ross v. State*, 442 N.E.2d 981, 983 (Ind. 1982); *Thomas v. State*, 451 N.E.2d 651, 654 (Ind. 1983); *Taylor v. State*, 468 N.E.2d 1378, 1383 (Ind. 1984); *Taylor v. State*, 511 N.E.2d 1036, 1040 (Ind. 1987). The premise underlying this conclusion was that the **only** issue before the jury is whether the defendant is a habitual offender as that term is defined by statute: that is, whether the defendant has been previously convicted of two unrelated felonies.

Yet, around the same time, this premise was questioned several times by Justice Dickson, writing once for the Court and in two separate opinions. In *Mers v. State*, 496 N.E.2d 75, 79 (Ind. 1986), we recognized—for the first time—that a "person cannot be found to be a habitual offender upon merely two felony convictions." Rather, there must be three: the primary felony plus the two prior unrelated felonies. *Id.* And the jury must independently determine "whether, based on these three felonies, defendant's sentencing status should be that of a habitual offender." *Id.*

Just a few weeks later, however, the Court departed from this principle in *Hensley v. State*, 497 N.E.2d 1053 (Ind. 1986). There, the majority found no error in providing the jury with a special verdict form that stated, "We the jury find beyond a reasonable doubt that the defendant . . . is an habitual offender in that he has the following prior convictions" and then listed the alleged convictions to which the jury responded "yes" or "no." *Id.* at 1057. Hearkening back to the premise underlying the pre-*Mers* cases, the majority reasoned that "the jury's function in a habitual offender proceeding is to determine whether the defendant is a habitual offender as defined by statute" and that the "verdict form" comported with this function. *Id.* Justice Dickson dissented, identifying that the form failed to account for the jury's separate constitutional authority under Article 1,

Section 19 to not find the defendant to be a habitual offender irrespective of proof establishing the prior convictions. *Id.* at 1058 (Dickson, J., dissenting).

The conflict resurfaced a year later in *Duff v. State*, 508 N.E.2d 17, 20 (Ind. 1987) (plurality opinion), in which two justices found no error when a trial court instructed jurors that they were not the finders of law during a habitual-offender proceeding. Those justices, echoing prior decisions and ignoring *Mers*, declared that the jury's "sole duty" was to determine "whether or not the defendant has been twice previously convicted of unrelated crimes." *Id.* Writing separately, Justice Dickson again emphasized that the jury must also determine "whether such two convictions, when considered along with the defendant's guilt of the charged crime, lead them to find that the defendant is a habitual criminal." *Id.* at 23 (Dickson, J., separate opinion).

A decade later, we put an end to the conflict—in two decisions handed down the same day—by squarely rejecting the premise that a habitual-offender jury decides only whether a defendant has accumulated the requisite prior felony convictions. *Seay*, 698 N.E.2d at 736–37; *Parker v. State*, 698 N.E.2d 737, 742 (Ind. 1998). Writing for a unanimous Court in *Seay*, Justice Sullivan first expressly overruled precedent "to the extent that it can be interpreted to mean that art. 1, § 19, does not apply to the status determination in habitual offender proceedings." 698 N.E.2d at 734–35. The Court then adopted the principles set forth by Justice Dickson in *Mers*, *Hensley*, and *Duff*, ultimately concluding that the jury is the "judge of both the law and the facts" as to whether a defendant is a habitual offender "irrespective of the uncontroverted proof of prior felonies." *Id.* at 736–37. We reiterated the same sentiment in *Parker*, declaring that encompassed within the jury's right under Article 1, Section 19 is an "independent and separate authority to determine whether the defendant is a habitual offender after it has concluded that the State has properly proven two prior felonies." 698 N.E.2d at 742.

Yet, the concurring opinion asserts that the Court merely "suggested" Article 1, Section 19 "applies to determining whether a habitual offender enhancement applies." *Ante*, at 2 (opinion of Molter, J.). To the contrary, in

*Seay* we explicitly adopted "the Court of Appeals opinion regarding the applicability of art. I, § 19, to habitual offender proceedings." 698 N.E.2d at 733; *see also Parker*, 698 N.E.2d at 742 (referencing *Seay* in recognizing that "we definitively established that art. I, § 19, is applicable during habitual offender proceedings"). And because Article 1, Section 19 applies in such proceedings, the jury has the constitutional right to make a status determination independent of its factual determination regarding a defendant's prior felony convictions.

We have consistently applied these principles with one exception. As the lead and concurring opinions point out, in *Walden v. State*, 895 N.E.2d 1182, 1185 (Ind. 2008), the Court—in a 3-2 decision—walked back *Seay*'s reliance on Article 1, Section 19. But the majority opinion in *Walden* did not mention *Parker*, and it explicitly referenced *Seay*'s holding in the context of jury instructions. *Walden*, 895 N.E.2d at 1185. More importantly, two years later, we reaffirmed *Seay*'s constitutional basis in a unanimous opinion. *Sample v. State*, 932 N.E.2d 1230, 1232–33 (Ind. 2010). Thus, contrary to the concurring opinion, we have neither "abandoned" nor "disavowed" the principle that Section 19 applies in habitual-offender proceedings. *Ante*, at 2, 4 (opinion of Molter, J.). And the lead opinion accurately concludes that "*Seay* was correct in its holding and its original constitutional basis." *Ante*, at 9 (opinion of Goff, J.).

That holding and its constitutional basis, coupled with the above history and applicable precedent, undeniably establish that the jury, in exercising its constitutional right under Article 1, Section 19, must make two determinations in a habitual-offender proceeding: (1) whether the defendant has accumulated the requisite number of prior unrelated felony convictions; and (2) whether, based on those convictions and the primary felony, the defendant should be given the status of a habitual offender. Yet, three of my colleagues have decided to restrict the jury's constitutional right by prohibiting **any** evidence relevant to the status determination. As our precedent has made clear, their position not only resurrects long-repudiated reasoning, but it also dilutes—if not nullifies— the jury's constitutional right in habitual-offender proceedings.

## III. Evidence is relevant in a habitual-offender proceeding if it assists the jury in making either of its constitutionally required determinations.

Both the lead and concurring opinions rely on *Taylor v. State*, 511 N.E.2d 1036 (Ind. 1987) and legislative intent to conclude that the only evidence relevant in a habitual-offender proceeding is that which tends to prove or disprove the defendant's prior unrelated felony convictions. Neither basis supports this conclusion. *Taylor*'s relevancy determination was grounded on a premise we have since consistently rejected, and legislative intent cannot override the requirements of the Indiana Constitution.

Recall that the basis for the *Taylor* Court's relevancy conclusion was that "[t]he only relevant evidence in a habitual offender proceeding is evidence that proves or disproves the defendant's prior felony convictions." 511 N.E.2d at 1040. But, as illustrated above, we unequivocally renounced that position eleven years later in *Seay* and *Parker* when we held that Article 1, Section 19 applies in habitual-offender proceedings and clarified that the provision requires the jury to make an independent status determination. And, in subsequent years, we reiterated these conclusions multiple times. *Hollowell v. State*, 753 N.E.2d 612, 617 (Ind. 2001); *Winn v. State*, 748 N.E.2d 352, 360 (Ind. 2001); *Warren v. State*, 769 N.E.2d 170, 171–72 (Ind. 2002); *Smith v. State*, 825 N.E.2d 783, 785–86 (Ind. 2005); *Sample*, 932 N.E.2d at 1232.

Thus, the concurring opinion is simply incorrect that "Article 1, Section 19 makes no difference" in this case. *Ante*, at 2 (opinion of Molter, J.). It makes all the difference. Our precedent applying that provision in habitual-offender proceedings firmly establishes that the jury must decide whether the defendant should be given the status of habitual offender. And that status decision turns on a consideration of the prior convictions as well as the primary felony—a principle we applied in our only two decisions to consider relevant evidence in habitual-offender proceedings after *Seay* and *Parker*.

Indeed, both *Hollowell* and *Warren* repudiate *Taylor*'s relevancy conclusion. In *Hollowell*, despite the parties' stipulating to the defendant's prior convictions, we held that the trial court docket for one of them was relevant "to the jury's decision whether or not to find a defendant to be a habitual offender." 753 N.E.2d at 617. As we explained, "the facts regarding the predicate convictions are relevant" to the status determination because the jury must independently decide that issue irrespective of uncontroverted proof establishing the predicate convictions. *Id*. And, precisely for this reason, we held in *Warren* that "[t]he nature of the primary felony" was relevant to the jury's status decision. 769 N.E.2d at 172.

It is telling that neither *Hollowell* nor *Warren* cited *Taylor*. In fact, until today, **no** appellate court has ever cited *Taylor* for its relevancy conclusion. So, although the concurring opinion would "resolve this case based on *Taylor* and stop there," *ante*, at 2 (opinion of Molter, J.), there is no legal basis for doing so. Indeed, as indicated above, it was eleven years **after** *Taylor* that we held Article 1, Section 19 applies in habitual-offender proceedings and requires the jury to independently make a status determination. By now resurrecting *Taylor*'s disavowed position, my colleagues should recognize that the relevancy analysis in both *Hollowell* and *Warren* is abrogated. Applying *Taylor*, the docket in *Hollowell* is not relevant because the parties' stipulation proved the defendant's prior convictions, and the nature of the primary felony in *Warren* is not relevant because it is unrelated to the prior convictions. Those decisions, however, properly followed and applied controlling precedent.

Aside from improperly resurrecting and relying on *Taylor*, the lead and concurring opinions also hinge their relevancy conclusions on the notion that the legislature intended that the jury consider only evidence related to the existence of the defendant's prior convictions. The legislature can certainly impose statutory limits on the aggravating circumstances a trial court can consider when imposing a death sentence, *Bivins v. State*, 642 N.E.2d 928, 955–56 (Ind. 1994), or on a defendant's ability to use voluntary intoxication to negate the requisite mens rea of a crime by reason of voluntary intoxication, *Sanchez v. State*, 749 N.E.2d 509, 521 (Ind. 2001). But the legislature cannot impose limits—either by statute or through its

intent—that conflict with express constitutional requirements. *See, e.g.*, *Strong v. Daniel*, 5 Ind. 348, 350 (1854). And because the legislature has entrusted the jury with making a habitual-offender determination, Article 1, Section 19 applies and vests the jury with the constitutional right to decide whether the defendant should be given habitual-offender status. Thus, excluding all evidence relevant to that decision impermissibly impinges on the jury's constitutional authority.

For these reasons, the relevancy analysis embraced by both the lead and concurring opinions erroneously relies on *Taylor* and legislative intent. And contrary to the concurring opinion's assertion, this is not a case in which "[c]onstitutional avoidance is especially prudent." *Ante*, at 2 (opinion of Molter, J.). In fact, exercising constitutional avoidance isn't even appropriate here. To be sure, it is our duty "not to enter upon the consideration of a constitutional question where the court can perceive **another ground** on which it may **properly** rest its decision." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001) (quoting *Bayh v. Sonnenburg*, 573 N.E.2d 398, 402 (Ind. 1991)) (emphasis added). But, as demonstrated above, Article 1, Section 19 unquestionably applies to habitual-offender proceedings. And neither *Taylor* nor legislative intent is instructive as to what evidence is relevant for the jury to consider when making its constitutionally required determinations in such a proceeding. Thus, neither presents "another ground" to "properly" find Harris's proffered testimony irrelevant.

Rather, our precedent establishes that in a habitual-offender proceeding before a jury, two types of evidence are relevant. The first is evidence that assists the jury in making its first determination, which plainly includes evidence that tends to prove or disprove the existence of the requisite convictions. And the second is evidence that assists the jury in making its status determination, which turns on a consideration of the primary felony and the prior unrelated felonies. As the lead opinion observes, the jury makes this decision "irrespective of proof of the requisite unrelated convictions." *Ante*, at 13 (opinion of Goff, J.). Thus, to exercise its constitutional authority under Article 1, Section 19, the jury must be able to consider evidence relevant to the status determination, which necessarily may extend beyond the existence of the prior convictions.

Evidence is relevant if it (1) tends to make a fact more or less probable than it would be without the evidence, and (2) the fact is of consequence in determining the action. Ind. Evidence Rule 401. Simply put, "relevant evidence is probative evidence," *Shane v. State*, 716 N.E.2d 391, 398 (Ind. 1999); that is, anything "that tends to prove or disprove a point in issue," *Probative Evidence*, Black's Law Dictionary (11th ed. 2019); *see also Hill v. Gephart*, 62 N.E.3d 408, 410 (Ind. Ct. App. 2016) (recognizing that evidence is relevant if it "provides background information that would be helpful to a jury"), *trans. denied*. As we have previously acknowledged, this liberal standard "sets a low bar." *Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017).

Applying these principles to habitual-offender proceedings before a jury, evidence is relevant if it tends to prove or disprove the two issues the jury must decide: (1) whether the defendant has accumulated the requisite number of prior unrelated felony convictions; and (2) whether, based on those convictions and the primary felony, the defendant should be given the status of habitual offender. Deciding the second issue may involve the jury considering circumstances closely related to the three convictions, such as the defendant's age at the time of each or the nature of the offenses. Indeed, when offered, this evidence is necessary for the jury to exercise its constitutional right under Article 1, Section 19.

But there are limits. Our trial courts make relevancy determinations all the time—they are well-equipped to decide whether proffered evidence is closely related to the defendant's three convictions and thus relevant to the jury's status decision. And those judges retain discretion to exclude such evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Evid. R. 403.

Here, the parties stipulated to the existence of Harris's prior unrelated convictions, and, outside the presence of the jury, Harris testified about those convictions as well as the primary felony. The stipulation established the existence of the requisite prior convictions, thus entitling the trial court to exclude Harris's proposed testimony that collaterally attacked one of the convictions. But Harris's testimony also included circumstances closely related to the primary felony offense. And because

the jury was empaneled solely for Harris's habitual-offender proceeding, it did not have the opportunity to hear any evidence about that offense. Thus, Harris's excluded testimony included potentially relevant evidence in that it could have aided the jury in deciding whether he should be given the status of habitual offender.

For these reasons, I would hold that the trial court abused its discretion in prohibiting the jury from hearing Harris's testimony about the primary felony. I would therefore vacate the habitual-offender adjudication and remand this case to the trial court for a new habitual-offender proceeding.

Slaughter, J., joins in part.

**Slaughter, J., dissenting.**

I join the Chief Justice's separate opinion in part and agree with her proposed disposition for Defendant, Christopher Jerome Harris. But, unlike the Chief Justice, I do not join Part I of Justice Goff's lead opinion for the Court. While I largely agree with his constitutional analysis in Part I, under principles of constitutional avoidance, I do not support addressing constitutional questions in a case decided on other, non-constitutional grounds. I write separately here to note a couple thoughts about how (or whether) article 1, section 19 of our state constitution may apply in a future case.

First, by its terms, article 1, section 19 applies in "all criminal cases whatever". This provision does not limit its application to sentencing proceedings but also presumably applies to a criminal case's guilt phase.

Second, a criminal jury has the "right to determine the law and the facts" under article 1, section 19. Relevant here, our legislature has entrusted such juries with determining a criminal defendant's status as a habitual offender. Ind. Code § 35-50-2-8(h). The assignment of that responsibility to juries means article 1, section 19 applies here. In my view, the legislature could withdraw that determination from the jury without running afoul of section 19. One option would be for the trial court alone to make that determination based on the historical fact that the defendant was convicted of two prior unrelated felonies. See *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (fact of prior convictions need not be submitted to jury and proved beyond a reasonable doubt).

Neither of these two issues is before the Court today. But in a future case, I am willing to consider applying article 1, section 19 outside the habitual-offender context. I am also open to limiting this provision's application if the legislature elects to remove juries from the habitual-offender determination.